Mr. Stonebarger. Yes, thank you, Your Honor. May it please the Court, Gene Stonebarger for Plaintiffs and Appellants. Also with me is my co-counsel, Charles Billy. Also in the courtroom are Plaintiffs and Appellants, Mr. McLean and Mr. Doyle. Your Honor, military reservists are a protected class in this country. Those protections are afforded through USERRA to ensure that military service members are treated equally as other employees. The trial court ruled on a motion for summary judgment that we lose the case after weighing disputed material facts. We have three claims in this case at issue. One is straight discrimination leading to termination. The basis for that was that, and as the trial court agreed, the district court agreed that the military service was a motivating factor in the termination and in the adverse employment consequences. The court found that there was a stand-alone reason for the termination through the concurrent duty policy. The concurrent duty policy that Delta had in place prohibited military service members from performing military duty on the same day that they were receiving any compensation from Delta. So I know that's your argument, but it seems to me that there are two separate policies at issue. One is the concurrent duty policy, and that was part of the basis for the motivating factor finding of the district court. But it seems to me that the independent basis given for firing separate and apart from that was an abuse of sick leave, which is not... I read the concurrent duty policy, at least as y'all have presented it to us, and it does not appear to me as if sick leave abuse is covered by that. Do I have that wrong? Judge Leff, yes, you do have that incorrectly, so don't be offended to tell me. Yes, that is incorrect, and the reason is the sick leave abuse was based in the military duty. The sick leave abuse was based on Delta's position that one... Well, it may be part of the concurrent duty policy. It may be that the sick leave was during, you're right, that they took sick leave and did military duty. That was the violation. But in terms of what was violated, it doesn't appear to me as if the violation was of the concurrent duty policy. It appears to be of a separate policy which says when you're sick, you actually have to be in bed watching Price is Right and not doing military duty. This actually is part of the concurrent duty policy because... Can you tell me where you are reading the concurrent duty policy that you're talking about? Because I want to make sure we're on the same page, and I want to see how sick leave falls within that. Right. The concurrent duty policy specifically states that one cannot perform military duty on the same day as compensation. Sick leave falls in that category and was enforced by Delta in that way such that because one is taking, is receiving compensation on sick leave that they can't... If you're taking military duty, you can't also work. That's what I understand the policy to be. But that's different from I am sick, I am taking sick leave, meaning I'm not working, but then I am getting double dipping through my military service. Right. So Delta's concurrent duty policy only prohibited military duty being performed. And there's a specific distinction between military duty that does not require a leave of absence and a formal military leave of absence. Here, both of my clients were commanding officers of their squadrons, and there was other work that needed to be done beyond flying the airplane. Okay. This is a concurrent duty thing, and I agree with you that the policy itself seems to at least be evidence of a motivating factor. That seems to be... Let me ask it this way. Assume for the moment I don't agree with you, and I think the sick leave policy is separate and apart from the concurrent duty policy. Was there not undisputed fact that at least Delta believed your clients violated the sick duty policy and fired them for that independent basis? They're fired for performing military duty while on sick leave.  And in the case of... Delta had reasonable grounds for believing that they had done that. Isn't that wrong? That's right. But on its face, the concurrent duty policy is discriminatory. And in this situation... The question I'm asking you to assume... I'm asking you to agree to it. Okay. I'm asking you to assume that there are two separate policies. One being concurrent duty, meaning I am supposed to be working for Delta and I am doing whatever military service. And second, when I'm on sick leave, I cannot do anything else other than be sick. Assume for the moment, did Delta not have reasonable belief that there was a violation here by your clients of the sick leave policy? And would that not be an independent basis for firing? There was no policy that prohibited the employees from doing anything else during sick leave other than military duty. Mr. McLean, for instance, could not... His restriction was that he could not lift over 10 pounds over his shoulder for a hernia. The Delta obligations require him to do so. He has a bag that's 40 pounds that must be put up. However, he could recover during sick leave and also perform military duties... I'm not saying it's not possible. I'm just saying...  Isn't it undisputed in this record that Delta believed it had a policy which said that once you took a sick day, you were not allowed to make money doing anything else, even if you could, that you were not allowed to? And secondly, that they believed that they fired him on that basis? Yes, they did not have a policy that they could not do anything else during sick leave or make any other money during sick leave. Same goes with long call or reserve, where a pilot's on reserve for three to six days. They have... The company can call them back for a flight with at least giving them a minimum of 12 hours. So during that time, whether it's on reserve or on sick leave... Well, they wouldn't be called on sick leave, but on reserve, they could be a bartender. They could be making money while on payroll for Delta doing anything else other than military duty. They could be drinking as well at the same bar. They would have 12 hours to call back. So that is on the reserve. Sick leave is also... There's compensation. ...had specifically instructed McLean, for example, if he intended to perform duties in his Air Force Reserve Unit, he could not remain unpaid sick leave from Delta during that period. And then he did it anyway. Right. Well, Mr. McLean was told by his supervisor that even though there was the former policy, that the former supervisor Underwood actually did this himself and did military duty while on leave. Even if that happened, he was told, look, you go to Tampa, you go to your military unit, you can't remain on sick leave. Only after the fact. After the fact that he had been performing the military duty while on sick leave. Because he wasn't... It didn't affect his ability to... No, Mr. McLean flew from Minneapolis to Tampa. An email was sent to him by his supervisor. It's a docket entry 171-10. And it's a long email. I'm not going to read the whole thing. But it essentially says, if you're on sick leave, you cannot perform military duty. And that your client agreed that he specifically, and the evidence showed, that he specifically with that advice did perform military duty when told by his supervisor not to do so. That's a docket entry 171-13 at page 2. That's a violation of concurrent duty policy that he got fired for because he was performing military duty during the sick leave. Yes, sir. I understand the line that you're drawing. Yes. Where in the record would I find something that said, Adele had no problem with someone taking sick leave and then working as a bartender or teaching a high school class or whatever while being paid by Delta for sick leave? There's no prohibition specifically that states that they cannot do anything during sick leave. There's no record evidence of Delta ever allowing anybody to do that. You're just saying there's no record evidence that Delta had a policy that when you take sick leave, you can't just go work some other job. That's what you're saying? That's right. They didn't have that policy. One could be on sick leave. What Delta wanted is for if someone was performing military duty on sick leave, that they actually take a formal leave of absence. But being on sick leave didn't interfere with the ability to perform for Delta because they were on that leave. Under the law, the military employee would not need to take a formal leave of absence to perform that duty. And one that was a bartender or was maybe a legal researcher who was getting paid that's home recovering, and they're doing legal research, for instance, out there at home, they're still recovering, and there's nothing to prohibit. Is there anything in the record that gets to Judge Bratcher's question indicating that Delta allowed that very thing? Allowed a bartender to serve cocktails while on sick leave or allowed a lawyer to do legal research while he was on sick leave? There's nothing that prohibits it, Your Honor. There's nothing that expressly allows it. However, on Long Call Reserve, for instance, it does allow for any other. And it's very common for moonlighting. And I will say, okay, thank you. I'd like to reserve my time today. Thank you, Your Honor. Mr. Kennelly. Thank you, Your Honor. May it please the Court, Michael Kennelly on behalf of Delta Airlines. Plaintiffs challenged the district court's ruling on many grounds, but their arguments all lack merit, and many of them aren't properly before this Court because plaintiffs failed to develop and support them below. I'll start, as they do, with the discrimination claims before moving on, if time permits, to the pension and vacation claims. Yes, Your Honor. And so I'll certainly start there. Given the undisputed facts, plaintiffs' discrimination claims are seeking to transform USERRA from a protection against discrimination into a source of immunity for improper behavior on the job. As the district court found, plaintiffs showed a lack of integrity and honesty in multiple ways before they resigned from Delta. For McLean, that included claiming military leave while not on military orders and, as the earlier discussion touched upon, misleading a supervisor so that McLean could fly a military plane while claiming to be too injured to fly for Delta. For Doyle, the inappropriate conduct included going skiing while on paid sick leave and failing to give Delta reasonable advance notice of his military leave. Plaintiffs don't dispute having engaged in these actions and don't have evidence to suggest they didn't, and, in fact, they admitted to having engaged in it. I'm somewhat sympathetic to the argument with regard to McLean, the first point you raised, of a violation of the concurrent duty policy. You didn't call it that, but that's really what it is. And that does seem to be circular in the sense that if the concurrent duty policy gets to sanctioning someone for performing military service, and that's the reason you fired them, that might be seen as a motivating basis for firing someone because they were doing military duty. That seems to be separate and apart from the sick leave rationale, which is common between them, and so that's the one I want to focus on. Your opposing counsel, first of all, says there is no policy in Delta which states that you cannot tenure, do legal research, whatever, while you're on sick leave. Where in the record do I find such a thing? Your Honor, I would say that the sick leave policy is separate from the concurrent duty policy, and you would look to document 178.3, which is in our supplemental appendix. It is section 14 of the pilot's working agreement. It's called sick leave. And in particular, section 14F4, which is on page 78, discusses the company's right to demand verification for the sick leave and, if it has grounds to suspect, a good faith basis to inquire regarding the medical reason. And there's evidence in the record that that prohibits you being able to work at something. It just means if you're sick or not. I mean, if I have the sniffles and can't be in the cockpit, but I certainly can be on Westlaw, that doesn't mean I don't have sniffles. It just means that I can do two things at once. Tell me where it prohibits making money while you're claiming sick leave from Delta. Okay, the other part of the record I would highlight on this point is docket number 201, which is from Jim Graham's deposition. And at page 133, he talks about the company's concern about the purpose of sick leave being to recuperate. And if someone is doing any work while on sick leave that could interfere with that, that would be of concern to the company. So it's not a written policy, what he was describing, but I think it explains the motivation for the language. Yes, and that's exactly right, Your Honor. I think Judge Luck cited the document. I think it was before at least some of it. It was on October 21, 2014. That's my read of it. The exact timing of all the instances, there were, I think, 35. So the email was sent on October 21, 2014. That's the docket 17110 email to McLean. And then the record shows that the total number of instances that Mr. McLean performed military duty while on paid sick leave was at least 31 days. But it doesn't go day by day as far as I'm aware to explain exactly when that happened. But that email was sent right after the conversation that Chief Pilot Underwood had with McLean about the request to go to Tampa, the request to use Delta flight privileges to do so. And docket 17113, which is the notice of intent to terminate, walks through that conversation as well. So I think the fair reading of all of those pieces of evidence are that the warning came before at least some of the military flight. But I also want to just underscore there are examples in the record of Delta having concerns with performing non-military duty while on sick leave. So as I mentioned in the opening, Doyle was skiing on New Year's, around New Year's 2014. Obviously, that doesn't have anything to do with performing military duty. And then one of the plaintiffs who's no longer in the case, but I think on this point provides some insight into the consistency of Delta's concerns, was a practicing lawyer and was taking sick leave and appearing in court on that sick leave. So I do think it's a generally applicable policy. I think it's supported in that. The policy, at least, is we want to make sure that you're using sick leave when you're sick than disaggregating the fact that, well, you're performing military duty. That would suggest you're not sick. It may be more than just collecting two paychecks. It may be ensuring that you're sick. That would be the concern, especially with skiing. And, again, the military flights in Tampa, I mean, that's the same job that the pilot would be doing for Delta. I mean, he makes the point that he'd have to ask someone to help him carry his luggage because of the weight restrictions. But, I mean, that can happen. I think we've all seen people lift each other's bags on airplanes before. Your Honors, I just want to go back to something because I didn't want to misspeak, Judge Luck, when I was giving my introduction. I wasn't saying that the concurrent duty policy was the first reason. I was pointing to the other point that the district court found independent of the concurrent duty policy, which is that there were actually 25 days when McLean claimed to be on military orders but wasn't, in fact, performing military duty. So that's not the concurrent duty policy as I understand it. This gets to a larger factual dispute that I think is complicated, which is their point about there's military duty and then there's doing military stuff even if you're not on duty. Those seem to be different things, and I've tried as best as I can to educate myself about this. But I think the larger point they're trying to make is when we're pointing to an independent basis of firing because of military duty, that sure looks like we're discriminating based on military duty. Whereas if we're defiering because of things that have nothing to do with military duty, like sick leave and other things that you mentioned, that is a much, I think, cleaner way to look at an independent basis. And so I understand the point you're making. I just think it feeds into one of their larger points, and I think the easier point for us to address is this independent basis there. I had one question for you or one series of questions for you on the second claim dealing with the pension. So as I understand for a pension-related claim that is based on seniority, the way we look at it is first you're paid. You need to be paid the pension based on your rate if it's determined by reasonable certainty, and if it's not able to be determined by reasonable certainty, then calculating your rate over 12 months, right? I'm being rough in stating that. There's an argument that your opposing counsel makes about whether you get to the second way to determine it because they say there's a dispute here, a fact, on whether rates can be determined to a reasonable certainty, and they point to their expert's testimony and their expert's report who they suggest say that. Does that not create a reasonable dispute on this reasonable certainty question? And if it does, do we not have to reverse on that because the district court relied on that to then get to the secondary post-2011 formula, the ATV formula that is used in order to calculate the rate that isn't otherwise reasonably certain? Your Honor, no, I don't think that this is the basis for reversal, and I think the reason is important. Their expert did not opine on whether pilot pay was reasonably certain. This is very important. In her deposition testimony, page 331 of the transcript, document 173, she specifically says she did not, quote, have any opinion as to whether pilot pay is reasonably certain. So you don't know whether or not it's even possible to determine if pilot pay is reasonably certain, and she says right. Exactly, Your Honor. And so I don't think that could create — that's not a battle of the experts when one of the experts isn't entering the arena. I think that all that the plaintiffs have put forward to suggest reasonable certainty is this metric that they've developed, the average pay hours metric that looks only at pilots who cleared the 70-hour threshold in a given month. She used when there is not reasonably certain. Isn't that right? That's how they're trying to use it, exactly. But that's not an indication that it is reasonably certain. It's just an average of a data set. You can always get an average, but they didn't have anyone to look then at the variability within that data set. They didn't have a standard deviation calculation of their own. They just kind of tried to poke holes in our experts' report. And so I don't think that there is any material dispute on that point. They also claim it sometimes that Delta itself suggested that pilot pay was reasonably certain because they moved to the average line value. And I think this is already pointed out in the briefs, but just to emphasize, that was because of negotiations with the pilots' union about using a more favorable calculation method. And the document that they cite, an internal Delta document, 206-5 at page 13, actually reaffirms Delta's view that it believed its prior practice under the 12-month look-back was permissible under USERRA. Those cover the points I really wanted to hit with discrimination and pension contributions. On the leaves of absence, you know, our main first argument on that is those arguments weren't properly made below, and the district court found as much. If the court has any questions about the substance of those, I'd see. I had one question regarding the special military, the special leave, the leave that went to service in a war zone. How should we read the statute and the regulations? Should we read it as a comparison between leaves and furloughs that are for non-military folks as compared to military folks? Or should we do it compared to military folk to any other leave or furlough that's out there for someone of the same pay grade and seniority? I think the first way, military versus non-military. Should we read the statute? You get that distinction. Sure, Your Honor. So Section 4316B would be the key language on non-seniority benefits. And then subparagraph capital B says that a person who is absent because of military service is entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority status and pay. And I think that generally indicates that it's not, it can't be just a subset of military pilots. I think it has to be, or military employees. I think it has to be the workforce in general. So that would be the language I would lean on for that point, Your Honor. That doesn't distinguish between military and non-military, though. That's just saying the comparison is to a general policy applicable to all folks. Yeah, I think that's right. But special conflict military leave is as specialized as you could get, I think, because it's a subset of the subset of military employees. And what about the regulations? I don't think there's, well, I mean, I don't want to speak too hastily. Yes, I'm looking at it right. The employee on military leave must be given the most favorable treatment according to any comparable form of leave, right? In uniform services, meaning it distinguishes between leave and then leave for uniform services. Is that the distinction? Yeah, I think so. I'm sorry, I'm not sure there's anything in this language of the regulation that is as powerful on this point as the statute. But I think that I'd rather have the statute on my side anyway. I think, yeah, I can't remember exactly what the title of section 1002.150 is. But I don't have it. Okay, so that's not really that illuminating. But yeah, so then if you did get to the, first of all, we don't think that argument was preserved because it's not pleaded. We think it's a separate claim. We think the district court didn't abuse its discretion in finding that the complaint needed to be amended. If you got to the merits, we think that the comparability factors all support us as well. The purposes of those two leaves, regular military leave and special conflict military leave, as Your Honor was noting, are different. Therefore, the latter is for employees who are in a combat zone. It was a post-9-11 benefit extended by Delta to reward service in particularly dangerous conditions. Thank you, Your Honor. Thank you, Your Honors. I have limited time, so I'd just like to address some points that were made. First, for Mr. Doyle, there's criticism or some suggestion, which is a disputed material fact, of whether when he was skiing on sick leave, whether that was appropriate or not. Mr. Doyle lives in Salt Lake City. It's certainly appropriate to engage in exercise, take a walk if you're sick, depending on the illness. It's not limited to injury. It can be sick leave. It's not limited to congestion, for instance. With regard to Mr. McLean, on the correspondence with Mr. Underwood and the email that was sent, that's a disputed fact as to whether Mr. McLean ever received the email. He was skiing on sick leave for the flu? He was on sick leave, I believe, for the flu and was recovering from that. So you can't have a reasonable basis for thinking that skiing while you're sick in front of the flu is an abuse of the sick leave policy? No, Your Honor, I don't believe that it is. I believe that skiing is exercise and can be not overly exerting, and being that it's near his home, that that is reasonable. But I do believe that's a disputed material fact. I don't know what the disputed material fact is. He was on sick leave for the flu, and he was skiing, and Delta determined that that was an abuse of the sick leave policy and terminated him for it. There's no dispute of any of those facts, is there? There's no policy that says that you can't perform exercise. He wasn't on vacation skiing. He lives near the ski resort. Can I ask you a question about what Judge Barber said? He said terminated him for it. I just refreshed my recollection. Is the record that proceedings were sort of initiated against these pilots, but then they quit instead of going through those sort of termination proceedings? Am I right about that? The investigations as to both of our plaintiffs here were relating to their military leaves, which led into investigations, including the sick leave. We believe these are pretexts. Both of them were terminated. They quit eventually. There was certainly constructive termination, and as Chief Judge Pryor wrote in the decision in Thomas, which is really on all points here, there was harassment and animosity towards the military. There was then an investigation, and in Thomas, the employee resigned rather than being fired. Here we have a voicemail message that was left from Mr. McLean, similar messaging to Mr. Doyle, that either you resign, and this is expressed in the voicemail message of Mr. McLean, either you resign or we'll terminate you, and then we will report this to the military and to PREA with the FAA, which is essentially a blacklist. So they were attacking the ability of our clients to earn either through military or as pilots. So the adverse employment action that you were attacking here is what you would say a constructive termination? Constructive termination, that's right, but it ended both of their terminations. I would just like to briefly address on the pension. Certainly, our expert analyzed all the paid data. Delta determined essentially it was reasonable certainty by using the average line value. You read, Chief Judge Pryor read the deposition transcript to your opposing counsel. Did your expert not concede that she was unable to make a determination of reasonable certainty for pilots? She viewed that as a legal issue as to whether or not she was presenting the data, and the data shows that the average pay She didn't make a determination about reasonable certainty. She made a determination. No, that's correct. What she did is present the facts that showed that there was reasonable certainty and that the average pay hours is actually 14 hours higher than the average line value. And importantly, that's Is the role of the statutory question whether these employees had reasonable certainty in pay, not whether all pilots or all Delta employees had reasonable certainty? It must be that the comparator group is the pool of non-military pilots. It specifically says reasonable certainty of the employees' rate. If they had not had military responsibilities and they didn't have military duty, because they had military duty and leaves of absences, they did have uncertainty in their own schedules. But pilots that did not have those obligations were uncertain because of their schedules, right? For these individuals, it was uncertain because the military duty to come up, they're commanding officers. For the pilots in general, and if they didn't have military obligations, their pay would have been reasonably certain. And Delta is actually using that approach of reasonable certainty by having a fixed number. Prior, when they thought that they didn't have reasonable certainty, they used the alternative, which is set forth in the statute, which is a 12-month look back for the pilots. But that's not what we have here. And on the vacation accrual claim, certainly you cannot discriminate against one segment of the military versus another. You can't say that we're going to have vacation accrued for Army members and reservists but not for Navy reservists. And so it would not make any logical sense for a company to be able to choose which service members get these non-seniority benefits versus others. And this is like Clarkson had set forth, the Merritt case set forth, that these are issues of fact, comparability of leaves. You've gone over a minute over your time. I apologize. Thank you. Thank you. Thank you.